```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA


                                         CIVIL ACTION
LANDRY DIXON


VERSUS                                   NO: 12-2150


TOYOTA MOTOR CREDIT                      SECTION: "J"(1)
CORPORATION, ET AL.
```

## ORDER AND REASONS

This matter is before the Court *sua sponte* to consider whether the Court has subject matter jurisdiction over this lawsuit, filed by Plaintiff, Landry Dixon ("Mr. Dixon") against Defendants, Troy Campise ("Mr. Campise") and Toyota Motor Credit Corporation ("TMCC"). Although the parties have engaged in motion practice without raising subject matter jurisdiction, a Court must raise lack of subject matter jurisdiction *sua sponte* once discovered, and may do so at any stage of the litigation. Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 336 (5th Cir. 1999). Having considered the record and the applicable law, the Court finds that it lacks subject matter over this dispute, and that the parties' claims should be **DISMISSED WITHOUT PREJUDICE**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

On August 27, 2012, Mr. Dixon, proceeding *pro se* and *in forma pauperis*,[1] filed the instant action alleging that the Defendants defrauded him and his corporation, DELF Inc., in connection with an automobile lease, thereby violating state and federal law.[2] (Rec. Doc. 1, p. 1) Plaintiff alleges that he is the registered agent and chief executive officer of DELF Inc., and that DELF Inc. is 501(c)(3) nonprofit corporation registered in the state of Louisiana as a behavioral healthcare education and service-delivery agency.[3] (Rec. Doc. 1, pp. 1-2) Plaintiff further alleges that on

---

[1] (Rec. Docs. 2-3)

[2] Plaintiff filed a typed complaint entitled "Fruadulent [sic] Lease Agreement," and the typed caption named both Delf, Inc. and Landry Dixon as Plaintiffs. (Rec. Doc. 1) However, Plaintiff used a pen to strike through the reference to Delf, Inc. in the caption of his complaint and to strike through most of the other references to DELF, Inc. throughout the remainder of the complaint rendering much of his complaint incomprehensible. (Rec. Doc. 1) For example, the Complaint provides:

> Plaintiff avers that he entered into a 60-month automotive lease agreement, on behalf of ~~DELF, Inc.~~, with the defendant's agent, at Lakeside Toyota, on December 1, 2010; plaintiff agreed to lease one 2010 Toyota Corolla passenger vehicle...

(Rec. Doc. 1, p. 2)

[3] Presumably to support his contention that DELF is a 501(c)(3) nonprofit corporation, Plaintiff attached to his Complaint a letter from the IRS to DELF, which states, among other things:

> based on the information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from federal income tax under section 501(a) of the Internal Revenue Code as an organization described in section 501(c)(3).

(Rec. Doc. 1, pp. 8-10). The letter is dated February 21, 2001, nearly nine years before December of 2010, the time when Mr. Dixon claims the parties confected the automobile lease at issue.

December 1, 2010, he entered into a 60-month automotive lease for a Toyota Corolla, at a rate of $312.91 per month, with the Lakeside Toyota dealership in Metairie, Louisiana. (Rec. Doc. 1, p. 2) Plaintiff alleges that he entered the lease on behalf of DELF.[4] (Rec. Doc.1, p. 2; Rec. Doc. 13, p. 1) Plaintiff attached a copy of the purported lease to his complaint. (Rec. Doc. 1, p. 5) It is an unsigned document that is dated December 1, 2010 and states (a) that Lakeside Toyota is the lessor, (b) that DELF Inc. is the lessee, (c) that Mr. Dixon is the co-lessee, and (d) that the monthly lease payment is $ 312.91. (Rec. Doc. 1, p. 5)

Plaintiff claims that he was promised "tax-exempt status recognition" by all parties present at Lakeside Toyota on December 1, 2010, including the "sales/lease manager, salesman, and other auto lease agreement officials of the Lakeside Toyota dealership."

---

[4] Because Plaintiff is proceeding *pro se*, the Court has construed the additional factual allegations that Plaintiff made in his Ex Parte Motion for a Temporary Injunction (Rec. Doc. 13), his Motion for Reconsideration (Rec. Doc. 24), and his Opposition to Mr. Campise's Motion for Dismissal (Rec. Doc. 22), as motions to amend his complaint, which the Court grants. See Smith v. Lonestar Constr. Co., Inc., 456 F. App'x 475, 476 (5th Cir. 2011) (courts must "liberally construe the briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel."); Johnson v. Atkins, 999 F.2d 99, 100 (5th Cir. 1993) ("A *pro se* complaint is to be construed liberally . . . "); Riley v. Sch. Bd. Union Parish, 379 F. App'x. 335, 341 (5th Cir. 2010) ("Under our precedent, when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a) . . . . this is particularly true where, as here, the litigant is *pro se* and has not yet made any amendments to her complaint.") (citations omitted). Thus, the summary of Plaintiff's complaint includes all of the factual allegations he made in these filings. See McClinton v. Sam's East, Inc., No. 11-2156, 2012 WL 4483492, at *1 (W.D. La. Sept. 28, 2012) (considering facts alleged in *pro se* plaintiff's complaints and oppositions in ruling on 12(b)(6) motion to dismiss); Dean v. City of New Orleans, No. 11-2209, 2012 WL 2564954, at *1 (E.D. La. July 2, 2012) (considering *pro se* litigant's written opposition in ruling on Rule 12(c) motion for judgment on the pleadings).

(Rec. Doc. 13, p. 1, ¶ 4) He states that he learned that DELF, Inc.'s Louisiana corporate certificate had expired and that he renewed it, and that he "was mandated to produce documentation certifying DELF, Inc. to be a federally-recognized 501c3 tax-exempt non-profit," which he did. (Rec. Doc. 13, pp. 1-2, ¶¶ 5,6) He also asserts that he "recalls that he signed many documents [on the night of December 1, 2010], and that it was getting late," that he "was given a two-paged legal document that was identified to him as the automotive lease agreement, which stipulated a monthly monetary obligation of $312.91 for 60 months," and that three weeks later, he learned via fax and telephone that the "lease agreement" provided to him on December 1, 2010 was not the "'official' automotive lease agreement." (Rec. Doc. 13, p. 2, ¶ 9) Plaintiff further alleges that on December 22, 2010, TMCC faxed a document to DELF, Inc.'s telephone number "which reflected that plaintiff had signed and initialed a similar-resembling lease agreement[5] . . . which indicated a monthly-installment obligation of $341.07 for 60 months."[6] (Rec. Doc. 13, p. 2, ¶ 10) Plaintiff claims that he later learned that Toyota Financial Services and the Lakeside Toyota dealership are "very selective as to which of their corporate

---

[5] Plaintiff refers to the "similar-resembling lease agreement" as "the switch." (Rec. Doc. 13, p. 2, ¶ 10)

[6] In his original complaint, Plaintiff claimed that on December 22, 2010, members of the Toyota Financial Services Office in Carol Stream, Illinois informed him that DELF, Inc. did not qualify as a tax-exempt corporate customer and that an additional $28.16 was being added to the monthly payment. (Pl.'s Compl., Rec. Doc. 1, p. 2)

4

clients are allowed to claim-and-receive tax-exempt consideration and recognition." (Rec. Doc. 1, p. 2) Plaintiff alleges that he made numerous efforts to demonstrate "that plaintiff and plaintiff corporation had met every 501c3 tax exempt prerequisites in this corporate- to-corporate automotive lease agreement transaction," and that his efforts were ignored. (Rec. Doc. 1, p. 2; Rec. Doc. 13, p. 2, ¶ 11)

Plaintiff alleges that he thereafter communicated to the Lakeside Toyota dealership and TMCC that he and DELF, Inc. "were going abide by the deal that was agreed to in REAL-TIME and in GOOD FAITH, with a supportive document on the night of 12/01/2012 [sic], notwithstanding the absence of defendant dealership's concurring signature." (Rec. Doc. 13, p.3, ¶ 12) Plaintiff claims that he has been making payments of $312.91 on the lease (Rec. Doc. 13, p. 3, ¶ 13) and that Defendants "harassed" him and DELF, Inc. and placed derogatory credit entries against him and DELF, Inc. that have adversely impacted their credit. (Rec. Doc. 1, p. 3; Rec. Doc. 13, p. 3, ¶ 14) Plaintiff further states that on August 10, 2012, he received a debt collection letter from counsel for TMCC asking him to either pay the delinquent taxes for the lease agreement or to dispute them. (Rec. Doc. 1, p. 3) Plaintiff attached this letter to his complaint. (Rec. Doc. 1, p. 7)

Plaintiff asserts that he filed suit due "persistent fiscal injustice, harassment, and corporate marginalization of DELF, Inc.

by [TMCC]." (Rec. Doc. 1, p. 3) He alleges that Mr. Campise is the "Chief Executive" of Lakeside Toyota and that the lease agreement was drafted and finalized on the premises of Lakeside Toyota, which is under Mr. Campise's "supervisory and managerial directorship." (Rec. Doc. 22, pp. 1-2, ¶¶ 1, 6) Plaintiff also alleges that Mr. Campise is involved in the day to day operation of Lakeside Toyota and refused to "authenticate" the purported lease agreement reflecting a monthly payment of $312.91, instead dismissing it as non-binding. (Rec. Doc. 22, pp. 1-3, ¶¶ 1,8,9)

Plaintiff alleges that as a result of the "mean and insensitive dynamics of this mammoth corporate defendant and its abusive surrogates and representatives," DELF, Inc. has suffered "aggregately-grave fiscal and name-recognition humiliation." (Rec. Doc. 1, p. 3) Plaintiff requests that the Court: (1) either enjoin the "defendant"[7] from further communication with DELF, Inc. or Mr. Dixon or limit the scope of permissible communications, (2) compel defendant to demonstrate that the lease agreement entered on December 1, 2010 is not excessively unfair according to the fair-market valuation of the leasing of a 2010 Toyota Corolla for 60 months, (3) compel TMCC to remove all derogatory credit entries against DELF, Inc. and Mr. Dixon related to the lease, (4) compel defendant to pay Mr. Dixon and DELF, Inc. compensatory damages at

---

[7] Plaintiff's complaint is ambiguous with regard to which Defendant he seeks the requested relief against.

the rate of $1,000.00 per day since December 22, 2010 (5) compel defendant to pay Mr. Dixon and DELF punitive damages at the rate of $1,000.00 per day since December 22, 2010, (6) compel Toyota to accept return of the leased vehicle without any further consideration from DELF or Mr. Dixon, and (7) dissolve the lease. (Rec. Doc. 1, pp. 3-4)

On November 12, 2012, TMCC filed its First Amended Answer and Counterclaim asserting that the parties did not agree to the terms in the unsigned document Plaintiff attached to his complaint. (Rec. Doc. 6) TMCC also asserted a counterclaim against Mr. Dixon for breach of contract and sanctions, claiming that the Court has supplemental jurisdiction under 28 U.S.C. § 1367. (Rec. Doc. 6, pp. 3-6) On December 9, 2012, Mr. Campise filed his answer. (Rec. Doc. 9) On December 12, 2012, Plaintiff filed a "Motion for Temporary Injunction." (Rec. Doc. 13) The Court denied Plaintiff's "Motion for Temporary Injunction" on January 8, 2013. (Rec. Doc. 18) On March 4, 2013, Plaintiff filed a Motion for Reconsideration of that Order (Rec. Doc. 24), which was opposed by Mr. Campise (Rec. Doc. 33) and denied by the Court on June 19, 2013. (Rec. Doc. 55) On May 7, 2013, TMCC filed a Motion to Dismiss and for Sanctions (Rec. Doc. 36), and a Motion for Partial Summary Judgment (Rec. Doc. 37) on its counterclaim against Mr. Dixon for breach of the lease. On May 15, Mr. Campise filed a memorandum in support of TMCC's Motion to Dismiss and for Sanctions. (Rec. Doc. 41) On June 19, 2013, the

Court issued short orders (a) granting Mr. Campise's Motion for Judgment on the Pleadings (Rec. Doc. 54), (b) granting in part and denying in part TMCC's Motion to Dismiss and For Sanctions[8] (Rec. Doc. 56), and (c) granting TMCC's Motion for Partial Summary Judgment on its counterclaim. (Rec. Doc. 57) The Court issued these short orders without written reasons and indicated that it would issue its written reasons at a later date. (Rec. Docs. 54, 56, 57) Given that the Court has *sua sponte* noticed jurisdictional defects that render its prior orders void, the Court will now dismiss this action without rendering written reasons for its prior orders.

## **DISCUSSION**

The party invoking the jurisdiction of a federal court has the burden of proving that jurisdiction is proper. Boudreau v. United States, 53 F.3d 81, 82 (5th Cir. 1995). "Unless otherwise provided by statute, federal district courts have jurisdiction over: (1) federal questions arising under the Constitution, laws, or treaties of the United States; and (2) civil actions between citizens of different states or foreign nations where the amount in controversy exceeds $75,000, exclusive of interest and costs." Tanner v. Davidson, (citing 28 U.S.C. §§ 1331 & 1332(a)). Rule 8(a) of the Federal Rules of Civil Procedure requires plaintiffs to plead, *inter alia*, a short and plain statement of the grounds for the

---

[8] The Court granted TMCC's motion to the extent it sought to dismiss Plaintiff's complaint for failure to state a claim and denied it to the extent it sought sanctions and attorneys' fees. (Rec. Doc. 56)

court's jurisdiction. FED. R. CIV. P. 8(A). "Unless a federal court possesses subject matter jurisdiction over a dispute . . . *any order it makes (other than an order of dismissal or remand) is void*." Shirley v. Maxicare Texas, Inc., 921 F.2d 565, 568 (5th Cir. 1991) (alterations and emphasis added). Thus, if this Court lacks subject matter jurisdiction, the previous orders in this case addressing the parties' various motions are void, and the Court must dismiss this lawsuit. Id.; Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1297 (5th Cir. 1985) ("Unless a dispute falls within the confines of the jurisdiction conferred by Congress, such courts do not have the authority to issue orders regarding its resolution.") A district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

**A. Federal Question Jurisdiction**

"In general, questions concerning federal question jurisdiction are resolved by application of the 'well-pleaded complaint' rule." Hart v. Bayer Corp., 199 F.3d 239, 243 (5th Cir. 2000). "The rule provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry," and that "[i]f, on its face, the plaintiff's complaint raises no issue of federal law,

federal question jurisdiction is lacking." Id. at 243-44 (citing Franchise Tax Bd. v. Laborers Vacation Trust, 463 U.S. 1 (1983)). Here, Plaintiff's complaint raises no issue of federal law. Plaintiff vaguely refers in his complaint to "violations of . . . federal law relative to a retail lease agreement transaction," and makes no specific reference to any federal statute or law. He claims that Defendants defrauded him, harassed him, and used defamatory tactics in connection with the lease of a vehicle. (Rec. Doc. 1, p. 1) Thus, Plaintiff's complaint raises state law claims for fraud and possibly defamation, but fails to present any federal questions.

Nevertheless, on June 20, 2013, two days after the Court granted Defendants' motions[9] and effectively dismissed all of Mr. Dixon's claims (Rec. Docs. 54, 56, 57), Mr. Dixon filed a "Motion for Resicion [sic] of Dismissal Order," (Rec. Doc. 60), in which he essentially seeks to amend his complaint to assert claims against Defendants under the Truth in Lending Act, 15 U.S.C. §§ 1601-1691 ("TILA") and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f. (Rec. Doc. 60) However, the Court declines to allow Plaintiff to amend his complaint, because (a) Plaintiff has had several months to amend his complaint to identify the federal law providing the grounds for relief, and (b) Plaintiff's proposed amendments will only create federal claims that are immaterial or

---

[9] See supra "PROCEDURAL HISTORY AND BACKGROUND FACTS."

insubstantial, and thus, insufficient to create federal question jurisdiction. Bell v. Hood, 327 U.S. 678 (1945) (A dismissal for failure to state a claim is a dismissal on the merits rather than a jurisdictional dismissal, unless the "alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."); Williamson, 645 F.2d at 416 (The general rule that a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action is subject to an exception for cases in which the federal claim is clearly immaterial or insubstantial.")

Here, Plaintiff's purported TILA claim is insubstantial and frivolous as it is apparent from Plaintiff's complaint and its attachments that the transaction at issue is outside of TILA's scope. Congress's stated purpose in enacting TILA was to assure meaningful disclosure of the "terms of leases of *personal* property for *personal, family, or household purposes*." 15 U.S.C. § 1601. Consistent with Congress's limited purpose to assure disclosure of the "terms of leases of *personal* property for *personal, family, or household purposes*," TILA identifies certain categories of transactions that are exempt from its disclosure requirements, including, *inter alia*, "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or

instrumentalities, *or to organizations*." Id. § 1603(1) (emphasis added). The pertinent TILA provisions in this case are in Part E, which requires "lessors" to make certain disclosures in connection with "consumer leases," and provides that "[a]ny lessor who fails to comply with any requirement imposed under section 1667a or 1667b of this title with respect to any person is liable to such person as provided in section 1640 of this title." Id. §§ 1667a(1)-(11), 1667d(a). However, the term "consumer lease" in Part E is also defined to specifically exclude a lease to an "organization." Id. § 1667(1). The statute defines the term "organization" as "a *corporation*, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." Id. § 1602(c)(emphasis added).

Here, it is evident from Plaintiff's complaint and attachments that the lease was exempt from TILA's disclosure requirements, because (1) it the was not for personal, family, or household use and (2) it constituted a lease to an "organization" within the meaning TILA Sections 1667(1) and 1603(1). Plaintiff's repeated allegations that he entered the lease on behalf of his non-profit corporation, DELF, Inc. and that the transaction should have been tax-exempt, because DELF, Inc. is a 501(c)(3) non-profit are inconsistent with TILA's requirement that the lease be for personal, family, or household purposes. Moreover, it is clear from (a) Plaintiff's allegations and (b) the document Plaintiff attached

to his original complaint that DELF, Inc., an "organization" within the meaning of Sections 1667(1) and 1603(1), was a lessee, and that the transaction at issue was, therefore, a lease to an "organization," which falls outside of the scope of TILA. In addition, the document that Plaintiff attached to his complaint states that the vehicle was primarily to be used for "business, agricultural or commercial" purposes (Rec. Doc. 1, p. 5), placing the transaction squarely outside of TILA's scope.

Second, Plaintiff's ECOA claim that the Defendants discriminated against him on the basis of race, age, and religion is frivolous. "The ECOA prohibits discrimination against credit applicants 'on the basis of race, color, religion, national origin, sex or marital status . . .'" Bhandari v. First Nat. Bank of Commerce, 808 F.2d 1082, 1100 (5th Cir. 1987). "To establish a prima facie case of discrimination under the ECOA, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he applied for and was qualified for a loan/credit; (3) despite his qualifications, plaintiff's loan application was denied or plaintiff was denied credit; (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff. Curley v. JP Morgan Chase Bank NA., No. 05-1304, 2007 WL 1343793, at *4 (W.D. La. May 7, 2007) (citations omitted). Given that Plaintiff does not allege that he was denied credit, as required under the third element, his attempt to amend his

complaint to state an ECOA claim would be futile. Thus, for the foregoing reasons, the Court finds (a) that Plaintiff should not be permitted to amend his complaint to attempt to state federal claims, and (b) that it lacks federal question jurisdiction over this action.

### B. Diversity of Citizenship

Plaintiff has not satisfied his burden of establishing complete diversity. Over the past several months, he failed to plead the citizenship of any of the parties to the action. Moreover, Plaintiff has provided the Court with two New Orleans addresses, asserts that the transaction at issue occurred at the Lakeside Toyota dealership located in Metairie, Louisiana, and named Mr. Campise, the General Manager of the Lakeside Toyota dealership as a Defendant. Considering these facts, it is highly likely that Plaintiff and Mr. Campise are both citizens of Louisiana for diversity purposes and that complete diversity is lacking. Moreover, the Court notes with respect to the amount in controversy, that Plaintiff has requested compensatory damages at the rate of $1,000.00 per day and punitive damages at the rate of $1,000.00 per day, since December 22, 2010. (Rec. Doc. 1, p. 4) Thus, Plaintiff claims he is entitled to an ever-increasing amount of damages that is, at present, in excess of one million dollars.

In spite of Plaintiff's fanciful damages claim, it appears that the amount in controversy is well below the jurisdictional

threshold of $75,000.00, given that (a) Plaintiff is proceeding *pro se* and has not incurred any attorneys' fees; (b) the parties' dispute centers around a sales and use tax that constitutes $1,689.90 of an approximately $20,000.00 Toyota Corolla lease, and (c) Plaintiff has failed to identify any Louisiana statute under which he is entitled to punitive damages. Ricard v. State, 390 So. 2d 882 (La. 1980) (Under Louisiana law, punitive damages are only available if specifically provided for by statute). Thus, the Court finds that Plaintiff has failed to adequately plead subject matter jurisdiction based on diversity of citizenship.

Accordingly,

**IT IS HEREBY ORDERED** that the above-captioned action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

New Orleans, Louisiana, this 17th day of July, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE